UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-----------------------------------------------------------------

|                              |   |                          |
|------------------------------|---|--------------------------|
| UNITED STATES OF AMERICA,    | : | CASE NO. 1:96-CR-119     |
|                              | : |                          |
|     Plaintiff, | : |                    |
|                              | : |                          |
| vs.                          | : | OPINION & ORDER          |
|                              | : | [Resolving Doc. 122]     |
| EDDIE TAYLOR,                | : |                          |
|                              | : |                          |
|     Defendant. | : |                    |
|                              | : |                          |

-----------------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On April 10, 1996, a federal grand jury indicted Defendant Eddie Taylor of one count of possessing with intent to distribute fifty grams or more of cocaine base (or "crack cocaine"), in violation of 21 U.S.C. sections 841(a)(1) and (b)(1)(A).[1]

In June 1996, Taylor went to trial. District Judge John Dowd, who presided over Taylor's trial, gave the jury the following charge describing the crime's elements:

> First, that the defendant possessed the narcotic drug controlled substance described in the indictment. Second, that the defendant did -- that the defendant did so possess with the specific intent to distribute the narcotic drug controlled substance described in the indictment; and Third, that the defendant did so knowingly and intentionally.[2]

The jury returned a guilty verdict. The verdict form read that "[w]e the jury, having been duly impanelled and sworn, do find the defendant Eddie Taylor guilty of possession of cocaine base (crack) with intent to distribute as charged in the indictment."[3]

---

[1] As described more fully below, the current version of § 841(b)(1)(a) applies for possession with intent to distribute 280 grams or more of crack cocaine.

[2] Doc. 125-2 at 125.

[3] Doc. 125-3.

The statutory penalty for Taylor's offense was ten years to life.  But because the Government sought a sentencing enhancement under 21 U.S.C. sections 841(b)(1)(A) and 851, the trial court imposed a statutorily mandatory life because of Taylor's previous drug offenses.[4]

Taylor now asks the Court to reduce his sentence under the 2018 First Step Act.[5]

## I.  Discussion

In 2010, Congress passed the Fair Sentencing Act of 2010.[6]  It reduced the statutory penalties for certain offenses, including violations of 21 U.S.C. § 841(a) involving crack cocaine.  However, these 2010 changes were not retroactive.[7]

Section 404 of the First of Step Act of 2018[8] made these changes retroactive, providing that a court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed."[9]

The parties do not dispute that Defendant's offense was a "covered offense" under § 404 (a)[10] and that Taylor is not subject to any of the limitations set out in § 404(c).[11]

---

[4] *See* Doc. 125-4 at 21 ("The government did file a timely notice of a sentencing enhancement, and because of the prior convictions, the court is left with the proposition that the statutory required sentence is a life sentence, and that's the sentence that the court believes it is required to impose.").

[5] Doc. 122.  The Government opposes.  Doc. 123.  Defendant Taylor submits a supplemental motion, Doc. 125, to which the Government replies.  Doc. 126.

[6] Pub. L. No. 111-220, 124 Stat. 2372 (2010).

[7] *See Dorsey v. United States*, 567 U.S. 260, 278 (2012) (holding that the new statutory penalties applied only to offenders sentenced after August 3, 2010, the effective date of the act).

[8] Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (December 21, 2018).

[9] *Id.*

[10] "[T]he term 'covered offense' means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010."

[11] "No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the

### A. Drug Quantity

Because the Fair Sentencing Act's statutory minimums and maximums depend upon the drug quantity Defendant possessed and distributed, Taylor's First Step Act eligibility turns on a threshold drug quantity issue.

In its 2000 decision *Apprendi v. New Jersey*, the Supreme Court held that a jury must determine any fact that would expose a criminal defendant to a penalty beyond the statutory maximum.[12]  And in 2013's *Allyne v. United States*, the Supreme Court held that the same logic applies to statutory minimums: any fact that increases a mandatory minimum is an "element" of the crime that must be submitted to the jury and proved beyond a reasonable doubt.[13]

Here, the parties chiefly dispute whether these intervening changes in constitutional sentencing law apply when considering Taylor's motion to reduce his sentence.  Defendant argues that because the jury was not instructed that it needed to find a drug quantity as an element of the offense, the Court should find him responsible for only fifty grams of crack cocaine (the minimum quantity under the then-applicable statute of conviction).[14]  The Government, though conceding that "the jury's verdict did not establish a drug quantity for the offense,"[15] argues that *Allyne* and *Apprendi* do not apply on First Step Act resentencing.

---

motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."

[12] 530 U.S. 466, 489 (2000).

[13] 570 U.S. 99, 103 (2013).

[14] *See United States v. Stone*, No. 1:96 CR 403, 2019 WL 2475750, at *3 (N.D. Ohio June 13, 2019) (adopting the lowest drug quantity under the then-applicable statute on First Step Act resentencing when jury did not make a drug quantity finding); *United States v. Pugh*, No. 5:95 CR 145, 2019 WL 1331684, at *3 (N.D. Ohio Mar. 25, 2019) ("Because the jury made no finding as to the specific drug amount, subsequent Supreme Court precedent requires that defendant cannot be responsible for more than [the threshold amount to trigger statute of conviction].").

[15] Doc. 126 at 4.

Instead, the Government contends that the Court should hold Taylor responsible for 329.7 grams of crack cocaine, as charged in the indictment.

While the Sixth Circuit has not addressed this question, many district courts have considered whether *Apprendi* and *Allyne* apply on First Step Act resentencing. Adopting the majority approach,[16] the Court holds that they do.

The Government argues that the Court should focus on the drug quantity charged in the indictment and the offered trial evidence—rather than the jury-found quantity (or lack of jury determined quantity)—because the Sixth Circuit has declined to apply *Apprendi* and *Allyne* retroactively on collateral review.[17]

This argument misconstrues retroactivity. Retroactivity doctrine merely circumscribes courts' power to grant relief on collateral review, not the temporal scope of the constitutional right itself. The constitutional rights announced in *Allyne* and *Apprendi* are not new court rules. Rather, these decisions interpret Constitutional rights that the Constitution has *always* guaranteed since its adoption.[18]

Thus, when the Court considers what Taylor's sentence would have been "as if" the Fair Sentencing Act applied, the Court must consider the constitutional rights belatedly

---

[16] *See United States v. Ballinger*, No. 2:09-CR-105, 2019 WL 3292156, at *2 (E.D. Tenn. July 22, 2019) (noting that the government's position is "contrary to the weight of persuasive authority, both within and outside the Sixth Circuit") (collecting cases).

[17] *See In re Mazzio*, 756 F.3d 487, 489-91 (6th Cir. 2014).

[18] *See Danforth v. Minnesota*, 552 U.S. 264, 271 (2008) ("'Retroactivity' suggests that when we declare that a new constitutional rule of criminal procedure is 'nonretroactive,' we are implying that the right at issue was not in existence prior to the date the 'new rule' was announced. But this is incorrect. As we have already explained, the source of a 'new rule' is the Constitution itself, not any judicial power to create new rules of law. Accordingly, the underlying right necessarily pre-exists our articulation of the new rule. What we are actually determining when we assess the 'retroactivity' of a new rule is not the temporal scope of a newly announced right, but whether a violation of the right that occurred prior to the announcement of the new rule will entitle a criminal defendant to the relief sought.")

recognized in *Apprendi* and *Allyne*, to which Taylor was always entitled. As Judge Nugent

persuasively argued in a recent decision, nothing in the First Step Act indicates that Congress

intended courts to "perpetuate the application of an unconstitutional practice when

determining a new sentence that complies with the [First Step Act's] directives."[19]

Further, the Government's focus on offense conduct is inconsistent with the First

Step Act's text. The Act directs the court to consider the sentence as if the Fair Sentencing

Act had applied when "the covered *offense* was committed." And a "covered offense" is

the "violation of [the] Federal criminal statute, the penalties for which were modified by . . .

the Fair Sentencing Act of 2010."[20] This language directs the Court to consider the statute of

conviction, not the offense conduct charged in the indictment or consider the trial

testimony.[21] *Apprendi* and *Allyne* say the jury should decide what the evidence shows.

Finally, the Government's argument violates the rule of lenity by working substantial

unfairness. Given the substantial mandatory minimum sentences applicable at the time,

defendants had little reason to contest Government assertions that they were responsible

for crack cocaine quantities above the 50-gram threshold.[22] Given the First Step Act's

remedial goals and the common-law command to construe ambiguities in criminal statutes

---

[19] *Stone*, 2019 WL 2475750, at *2. *See also United States v. Stanback*, 377 F. Supp. 3d 618, 623 (W.D. Va. 2019) ("Congress, when drafting the First Step Act in 2018, surely did not intend for courts to disregard the last six years of Supreme Court federal sentencing jurisprudence.").

[20] 132 Stat. at 5222.

[21] *See United States v. White*, No. CR 93-97, 2019 WL 3719006, at *13 (D.D.C. Aug. 6, 2019) (holding that a conduct-based interpretation of § 404(a) is inconsistent with the text); *United States v. Rose*, 379 F. Supp. 3d 223, 228 (S.D.N.Y. 2019) ("[First Step Act] eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct").

[22] *See United States v. Rose*, 379 F. Supp. 3d 223, 229-230 (S.D.N.Y. 2019) ("To preclude defendants from seeking relief on the basis of fact that may have had little significance at the time they were determined would be draconian and contrary to the remedial purposes of the First Step Act.").

in favor of defendants, it would be unjust to apply the Government's drug-quantity

approach here.

Thus, the question is whether taking the new statutory penalties and the

constitutional sentencing principles into account, Taylor is eligible for a new sentence.

### B. Sentence

Here, the Government admits that the jury's verdict did not establish a drug quantity.

Further, the jury was not instructed that it needed to find a drug quantity as an "element" of

the charged offense, as *Allyne* requires.  Thus, the court adopts the minimum drug quantity

under the then-applicable statute of conviction.

Under the version of 21 U.S.C. § 841(b)(1)(A) applicable in 1996, the jury found Taylor

guilty of possessing with intent to distribute fifty grams or more of crack cocaine.  Under the

Fair Sentencing Act, possession with intent to distribute fifty grams of crack cocaine now

carries a statutory penalty of five to forty years under 21 U.S.C. § 841(b)(1)(B).  With Taylor's

prior drug offenses, his statutory sentence would now be a mandatory ten years to life.

Because Taylor is eligible for a reduced sentence, the Court will conduct a sentencing

hearing to determine an appropriate reduction.

Citing *Dillon v. United States*,[23] the Government contends that First Step Act § 404

does not authorize the Court to conduct a hearing or consider the 18 U.S.C. § 3553(a)

sentencing factors when imposing a reduced sentence under the First Step Act.  But *Dillon*'s

conclusion turned on its reading of 18 U.S.C. § 3582(c)(2), which only empowered courts to

---

[23] 560 U.S. 817, 825-6 (2010).

"reduce" a term of imprisonment.[24]  In light of this particular language, *Dillon* held that "a district court proceeding under § 3582(c)(2) *does not impose a new sentence in the usual sense.*"[25]

In contrast, § 404 authorizes the Court to do just that: to "*impose* a reduced sentence" as if the Fair Sentencing Act were in effect when the offense was committed.[26] And under 18 U.S.C. § 3661, "[n]o limitation shall be placed on the information concerning the background, character, and conduct" of the defendant "for the purposes of *imposing* an appropriate sentence."[27]

Further, the Government's position—that the Court should simply reconstruct the record and imagine what the original sentencing judge would have done if not bound by the then-applicable mandatory minimum—is completely impractical.  First Step Act cases are *at least* nine years old,[28] and many are much older given the lengthy mandatory minimums at issue.  For this reason, it is likely that the judge deciding the First Step Act motion is not the same judge who imposed the original sentence.[29]  The records are also likely to be old, and even where they are available it may be difficult to reconstruct the original judge's reasoning by consulting the details in the sentencing transcript.

This case neatly illustrates the difficulties of the Government's approach.  Because a different judge sentenced Taylor twenty-three years ago, the Court cannot rely on its

---

[24] *Id.* at 825 (contrasting this language with statutes authorizing "resentencing" or remand "for further sentencing").
[25] *Id.* at 827.
[26] 132 Stat. at 5222.
[27] *Id.*
[28] Because they were decided before the Fair Sentencing Act went into effect in August 2010.
[29] *See Rose*, 379 F. Supp. 3d at 235.

recollection of the facts. And because Judge Dowd was legally bound to impose a life

sentence, he said nothing at all about the § 3553(a) factors.[30]  If the Court were restricted to

the trial-court record, there would simply be nothing to go on.

Finally, the First Step Act's resentencing scheme is discretionary.  The Court cannot

imagine that Congress would want courts to exercise this discretion without the benefit of

up-to-date information on the defendant's post-conviction conduct.

Thus, without deciding whether the First Step Act permits "plenary" resentencing,

the Court holds that it may consider any probative evidence regarding the Defendant's

character and conduct, including post-conviction conduct, when imposing a First Step Act

sentence.[31]  This approach is consistent with the approach taken by many other district

courts in First Step Act resentencings.[32]

---

[30] *See* Doc. 125-4 at 21-2 ("Now, I see no need to inquire of the government whether it has a sentencing recommendation given the lack of discretion on the part of the Court, and I think the same is true as far as [Defense counsel] is concerned on behalf of his client."); *id.* at 22 ("Mr. Taylor, I have devoted a lot of time to this case because I have been concerned about the extreme sentence in this case. And I assume you understand I have no discretion in this matter once I make the fact findings that I've made. However, I am required to give you the opportunity to speak in your behalf, and I do that now.").

[31] *See Rose*, 379 F. Supp. 3d at 233-4 ("The principle set forth in *Pepper* [*v. United States*, 562 U.S. 476 (2011)] and § 3661 requires that the district court be able to consider the most recent evidence of a defendant's life and characteristics, which may be the most probative information available, when deciding whether a defendant should continue to be incarcerated or, in some cases, be immediately released.").

[32] *See, e.g., United States v. Lutcher*, No. CR 03-338, 2019 WL 3006414, at *4 (E.D. La. July 10, 2019) (considering "all the pertinent facts in the case" and considering the § 3553(a) factors on resentencing); *United States v. Mitchell*, No. CR 05-00110, 2019 WL 2647571, at *7 (D.D.C. June 27, 2019) (considering the § 3553(a) factors on First Step Act resentencing); *Rose*, 379 F. Supp. 3d at 235 (same).

## II.      Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's First Step Act

Motion.  Because Defendant is eligible for a reduced sentence, the Court will schedule a

sentencing hearing at a date to be determined.

IT IS SO ORDERED.


Dated:  August 16, 2019                              s/      James S. Gwin
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE